IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Terrence Renard Russell, | ) | C.A. No.  1:23-1019-HMH-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | **OPINION & ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| United States, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the report and recommendation of United States

Magistrate Judge Shiva V. Hodges, made in accordance with 28 U.S.C. § 636(b)(1) and District

of South Carolina Local Civil Rule 73.02.[1]  Terrence Renard Russell ("Russell"), a federal

prisoner proceeding pro se, brings a claim for medical negligence against the United States under

the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b).  Finding that Russell's complaint is

time-barred, the court declines to adopt the report and recommendation and grants the United

States' motion to dismiss.

## I. BACKGROUND

In his complaint, Russell alleges that medical staff at FCI Edgefield failed to provide him

with timely medical treatment for his neck and back pain in the fall of 2020.  (Compl. 4-7, ECF

No. 1.)  The delay in treatment, Russell claims, caused his symptoms to worsen and led to him

---

[1] A report and recommendation carries no "presumptive weight," and the responsibility for making a final determination remains with the court.  Mathews v. Weber, 423 U.S. 261, 271 (1976).  The court reviews de novo "those portions of the report . . . to which objection is made" and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge" or "recommit the matter . . . with instructions."  28 U.S.C. § 636(b)(1).

being hospitalized for "an infection that eventually caused permanent damage to vertebrae in his lower back and neck." (Id. at 4, ECF No. 1.)

Although it is unclear when Russell presented his administrative claim to the Department of Justice ("DOJ"), the DOJ denied Russell's claim in a letter dated March 15, 2022. (Id. at 26-28, ECF No. 1.)  The letter concluded that there was "no evidence to support [Russell's] claim that [he] [had] suffered any injury or loss caused by the negligence or wrongful act or omission of a [Bureau of Prisons] employee acting within the scope of their employment." (Id. at 28, ECF No. 1.)  It also informed Russell that he had "six (6) months from the date of the mailing of this letter to bring suit in the appropriate United States District Court." (Id., ECF No. 1.)

Sometime in early September 2022, Russell delivered a request for reconsideration of the DOJ's decision to prison authorities for mailing. (Compl. 32, 35, ECF No. 1.)  The DOJ received Russell's request on September 16, 2022 – six months and one day after the denial letter was mailed. (Id. at 31, ECF No. 1.)  In a letter dated October 14, 2022, the DOJ denied Russell's request for reconsideration:

> The final denial letter in this action was mailed to you via certified mail on March 15, 2022, and informed you that you had six months from the date of mailing in which to file suit in an appropriate United States District Court.  You signed for and received the denial letter on March 16, 2022.  Your reconsideration request was received by the agency on September 16, 2022, beyond the six-month deadline, and as such, is untimely.  Based upon the foregoing, your claim will not be reconsidered.

(Id., ECF No. 1.)

Five months later, on March 13, 2023, Russell filed this lawsuit seeking damages under the FTCA. (Id. at 2-3, ECF No. 1.)  After the magistrate judge authorized service, the United States moved to dismiss, arguing that Russell's complaint is time-barred because he did not file suit within six months after the DOJ denied his administrative claim. (Mot. Dismiss, ECF No.

2

41); see 28 U.S.C. § 2401(b).  On November 27, 2023, Magistrate Judge Hodges issued her

report and recommendation recommending that the court deny the United States' motion.

(R&R, ECF No. 46.)  Affording Russell the benefit of the prison-mailbox rule, Magistrate Judge

Hodges found that Russell timely filed his request for reconsideration, which tolled the original

six-month period.  (Id. at 12, ECF No. 46); see 28 C.F.R. § 14.9(b).  Because Russell

commenced this action within six months after the DOJ denied his request for reconsideration,

Magistrate Judge Hodges concluded that Russell's complaint is timely.  (R&R 12, ECF No. 46.)

The United States objected to the report and recommendation on January 10, 2024,

arguing against application of the prison-mailbox rule and reiterating its position that Russell's

complaint is time-barred.[2]  (Objs., ECF No. 52.)  On January 25, 2024, Russell replied to the

United States' objections.  (Reply Objs., ECF No. 53.)  This matter is ripe for review.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint

for "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss,

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 570 (2007)).  This plausibility standard is met "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  "'[D]etailed factual

---

[2] "To trigger de novo review, an objecting party 'must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Elijah v. Dunbar, 66 F.4th 454, 460 (4th Cir. 2023) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).  In the absence of specific objections, the court reviews only for clear error, Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005), and need not give any explanation for adopting the report, Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983).

allegations'" are not required, but the plaintiff must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). In reviewing the complaint, the court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the nonmoving party." Rockville Cars, LLC v. City of Rockville, 891 F.3d 141, 145 (4th Cir. 2018).

### III. DISCUSSION

The issue before the court is whether Russell timely filed his request for reconsideration. To answer that question, the court begins by summarizing the framework governing FTCA claims.

### A. Overview of the FTCA

The FTCA effects a limited waiver of the United States' sovereign immunity. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). It "authorizes private tort actions against the United States 'under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.'" United States v. Olsen, 546 U.S. 43, 44 (2005) (quoting 28 U.S.C. § 1346(b)(1)). Before bringing a tort claim against the United States, however, a claimant must satisfy several procedural requirements.

First, the claimant must "present[]" the claim "in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. §§ 2401(b), 2675(a). Under regulations promulgated by the Attorney General, a claim is "presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident . . . ." 28 C.F.R. § 14.2(a). If the agency denies the claim, the claimant has two options. The claimant may either (1) file a lawsuit in federal court within six months after the agency

4

mails its denial letter, 28 U.S.C. § 2401(b), or (2) "file a written request with the agency for reconsideration" within the same six-month period, 28 C.F.R. § 14.9(b).  If the claimant seeks reconsideration, the claimant then has six months from the date the agency mails its final disposition to sue.  28 C.F.R. § 14.9(b); Redlin v. United States, 921 F.3d 1133, 1137 (9th Cir. 2019).  The claimant's failure to meet any of these deadlines results in the claim being "forever barred."  28 U.S.C. § 2401(b).

### B. Application of the FTCA's Procedural Requirements

In this case, the six-month limitations period for filing in federal court or requesting reconsideration began to run on March 15, 2022, when the DOJ mailed its denial letter.  Though Russell claims to have mailed his request for reconsideration within that period, the DOJ did not receive his request until September 16, 2022, one day after the period expired.  For the reasons discussed below, Russell's request for reconsideration was untimely because of this one-day delay.

As noted, 28 C.F.R. § 14.2 provides that a claim is "presented" when the appropriate agency "receives" written notice of the claim.  To be sure, this regulation discusses the "presentment" of a claim and not the "filing" of a request for reconsideration.  There is, however, no "indication that what constitutes presentment of a request for reconsideration is different from presentment of the claim itself."  Anderberg v. United States, 718 F.2d 976, 977 (10th Cir. 1983).  Indeed, courts have consistently recognized that the timeliness of a claimant's request for reconsideration hinges on when the agency receives it.  See, e.g., id.; Redlin, 921 F.3d at 1139; Moya v. United States, 35 F.3d 501, 504 (10th Cir. 1994); Lightfood v. United States, 564 F.3d 625, 628 (3d Cir. 2009); Stewart v. U.S. Veterans Admin., 722 F. Supp. 406, 408 (W.D. Tenn. 1989); Palmer-Williams v. United States, No. 14-CV-9260 (CS), 2016 WL 676465, at *7

(S.D.N.Y. Feb. 18, 2016) (unpublished), aff'd, 675 F. App'x 70 (2d Cir. 2017); Beatty v. United

States, No. 1:11-cv-170-TWP-DKL, 2011 WL 5395431, at *2-3 (S.D. Ind. Nov. 7, 2011)

(unpublished).

The court finds this position persuasive, especially considering the ordinary meaning of

the word "file,"[3] as well as the principle that courts must strictly construe the FTCA and resolve

all ambiguities in the United States' favor.  Williams v. United States, 50 F.3d 299, 305 (4th Cir.

1995); Cooke v. United States, 918 F.3d 77, 82 (2d Cir. 2019) ("[A]pplying the [common-law]

mailbox rule to claims under the FTCA would be inconsistent with the principle that waivers of

sovereign immunity must be strictly construed and limited in scope in favor of the sovereign.").

Thus, because the DOJ did not receive Russell's request for reconsideration by

September 15, 2022, his request was untimely.  Unless Russell is entitled to application of the

prison-mailbox rule or equitable tolling, his complaint, which was not filed until March 2023, is

time-barred.

---

[3] Over one hundred years ago, the Supreme Court observed:

> The word 'file' is derived from the Latin word 'filum,' and relates to the ancient
> practice of placing papers on a thread or wire for safe keeping and ready reference.
> Filing, it must be observed, is not complete until the document is delivered and
> received. . . . A paper is filed when it is delivered to the proper official and by him
> received and filed.

United States v. Lombardo, 241 U.S. 73, 76 (1916).  Modern dictionary definitions confirm that
the word "file" contemplates delivery and receipt by the proper party.  See File, Black's Law
Dictionary (11th ed. 2019) (defining "file" as "[t]o deliver a legal document to the court clerk or
record custodian for placement into the official record"); File, Oxford English Dictionary Online,
https://www.oed.com/dictionary/file_v3?tab=meaning_and_use (last visited Jan. 23, 2024)
(defining "file" as "[t]o place (a document) in a due manner among the records of a court or
public office"); File, Merriam-Webster Online Dictionary, https://www.merriam-
webster.com/dictionary/file (last visited Jan. 23, 2024) (defining "file" as "to place among
official records as prescribed by law").

### C. Whether the Prison-Mailbox Rule Applies

The Supreme Court first articulated the prison-mailbox rule in Houston v. Lack, 487 U.S. 266 (1988).  There, the Court considered whether a pro se prisoner's civil appeal was timely filed when it was delivered to prison officials three days before the expiration of the thirty-day filing period but was not received by the district court clerk until one day after the period expired.  Id. at 268-69.

Recognizing the "unique" circumstances pro se prisoners face, the Court held that a pro se prisoner's notice of appeal is considered "filed" when delivered to prison authorities for mailing to the district court.  Id. at 270.  The Court stressed that unrepresented prisoners "cannot take the steps other litigants can take to monitor the processing of their notices of appeal."  Id. "Unlike other litigants," the Court explained, "pro se prisoners cannot personally travel to the courthouse" and are forced "to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers."  Id. at 271.  "Worse," the Court continued, "the pro se prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay."  Id.

In reaching its conclusion, the Court also analyzed 28 U.S.C. § 2107 and Federal Rules of Appellate Procedure 3(a) and 4(a)(1).  Section 2107 provides that a litigant seeking to appeal "any judgment, order or decree" in a civil case must file a notice of appeal "within thirty days after the entry of such judgment, order or decree."  Id. at 272 (quoting 28 U.S.C. § 2107).  The Court observed, however, that the statute "does not define when a notice of appeal has been 'filed'" or even "designate the person with whom it must be filed."  Id.  As for Appellate Rules 3(a) and 4(a)(1), the Court noted that although both rules specify that notice must be filed "with the clerk of the district court," neither rule "sets forth criteria for determining the moment at

which the 'filing' has occurred."  Id. at 272-73.  Thus, the Court determined that "nothing" in the statute or the governing rules prevented it from "conclud[ing] that a notice of appeal is 'filed' . . . at the moment it is delivered to prison officials for forwarding to the clerk of the district court."  Id. at 272, 274.

The Supreme Court revisited the prison-mailbox rule five years later in Fex v. Michigan, 507 U.S. 43 (1993).  Fex involved a prisoner incarcerated in Indiana who was charged with new, unrelated offenses in Michigan.  Id. at 46.  After learning that Michigan authorities had placed a detainer on him, he gave Indiana prison officials his request for final disposition of the Michigan charges.  Id.  Under the Interstate Agreement on Detainers ("IAD"), an individual under a detainer must be brought to trial within 180 days "after he shall have caused to be delivered to the prosecuting officer . . . written notice of . . . his request for a final disposition to be made of the indictment."  Id. at 45 n.1 (quoting 18 U.S.C. App. 2, § 2, art. III(a)).  The prisoner's Michigan trial began 177 days after the prosecutor received the request but 196 days after the prisoner gave the request to Indiana prison officials for mailing.  Id. at 46.

Faced with a choice between two "triggering event[s]" – "[t]he prisoner's transmittal of his request to the warden . . . or the prosecutor's receipt of the request" – the Court concluded that the 180-day period did not begin to run until the prosecutor received the request.  Id. at 48, 52.  Focusing on the phrase "shall have caused to be delivered," the Court explained that it made "more sense" that "a legislature would select" delivery as "the starting point of a statute of limitations" rather than "a concept so indeterminate as 'caused.'"  Id. at 49.  Notably, the Fex majority did not discuss Houston.  It also rejected arguments that "fairness" or the IAD's "higher purpose" justified deviation from the statute's "textual requirement," reasoning that those

8

arguments were "more appropriately addressed" to the state legislatures that had adopted the

IAD.  Id. at 52.

As the above discussion suggests, there is some uncertainty on how to harmonize

Houston and Fex.  See generally Censke v. United States, 947 F.3d 488, 491-92 (7th Cir. 2020).

In the absence of controlling authority, however, the court believes that the best reading of the

two cases is that Houston applies unless "there is a specific statutory [or regulatory] regime to

the contrary."  Tapia-Ortiz v. Doe, 171 F.3d 150, 152 n.1 (2d Cir. 1999); Smith v. Conner, 250

F.3d 277, 279 (5th Cir. 2001) ("We shall resort to Houston if the rule does not clearly define

filing; otherwise, we will enforce the regulations as written."); see also Baker v. United States,

670 F.3d 448, 457 (3d Cir. 2012) ("Houston teaches that we can, in some instances, read a statute

to take into account delays that pro se prisoners face.  But any such reading must not run

contrary to the other terms of the statute.").  In other words, when the language of a "statutory or

regulatory scheme[] . . . clearly require[s] actual receipt by a specific date," Longenette v.

Krusing, 322 F.3d 758, 764 (3d Cir. 2003), Fex controls and bars application of the prison-

mailbox rule.  See Smith, 250 F.3d at 278 ("The Supreme Court has . . . emphasized that when

the language of the governing rule clearly defines the requirements for filing, the text of the rule

should be enforced as written."); Nigro v. Sullivan, 40 F.3d 990, 995 (9th Cir. 1994) ("Fex

instructs that Houston policies cannot override the plain meaning of a procedural rule.").

9

Applying that reading here leads the court to conclude that <u>Houston</u> does not apply to

FTCA administrative claims.[4]  Again, FTCA regulations specify that a claim is not "presented"

and a request for reconsideration is not "filed" until received by the appropriate agency.  <u>See</u>

<u>supra</u> p. 5-6.  Because the FTCA regime includes this "textual requirement," <u>Fex</u>, 507 U.S. at 52,

the court cannot apply the prison-mailbox rule to Russell's request for reconsideration.  <u>See</u>

<u>Smith</u>, 250 F.3d at 278-79 (declining to apply the prison-mailbox rule because the relevant

regulation defined the "filing date" as the "date of receipt"); <u>Nigro</u>, 40 F.3d at 994-95 (declining

to apply the prison-mailbox rule because the relevant regulation provided that an appeal is

"considered filed when [a] receipt is issued").

One additional point reinforces this conclusion.  The FTCA's administrative process is

intended, in part, "to ease court congestion and avoid unnecessary litigation, while making it

possible for the Government to expedite the fair settlement of tort claims asserted against the

United States."  S. Rep. No. 89-1327, at 2 (1966), <u>as reprinted in</u> 1966 U.S.C.C.A.N. 2515, 2516.

Applying the mailbox rule to a pro se prisoner's reconsideration request would, in some cases,

undermine that purpose.  Using this case as an example, if Russell's request were filed at the

moment he delivered it to prison officials for mailing, and if the request had been lost in the mail,

the DOJ would have been left without a chance to reevaluate whether settlement was warranted

before Russell's right to sue accrued.  <u>See</u> 28 C.F.R. § 14.9(b) ("Upon the timely filing of a

---

[4] The magistrate judge cites <u>Greer v. McGregor</u>, No. 8:10-2219-HMH-BHH, 2010 WL 4922705, at *1 n.1 (D.S.C. Nov. 4, 2010) (unpublished), <u>report and recommendation adopted sub nom.</u> <u>Geer v. McGregor</u>, No. 8:10-2219-HMH-BHH, 2010 WL 4922702 (D.S.C. Nov. 29, 2010) (unpublished), for the proposition that "this court has applied the prison mailbox rule to filings of FTCA claims in this district."  (R&R 8-9, ECF No. 46.)  That case, however, is inapplicable.  It involved a pro se state prisoner who asserted a claim for unpaid wages against a private party; it did not address whether the prison-mailbox rule applies to administrative filings under the FTCA.

request for reconsideration the agency shall have 6 months from the date of filing in which to

make a final disposition of the claim and the claimant's option under 28 U.S.C. 2675(a) shall not

accrue until 6 months after the filing of a request for reconsideration."); 28 U.S.C. § 2675(a)

("The failure of an agency to make final disposition of a claim within six months after it is filed

shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim.");

Irvin v. United States, No. 1:07-CV-0926-ECS, 2007 WL 9706489, at *4 (N.D. Ga. Oct. 9,

2007) (unpublished) (explaining that a "claimant's right to sue [is] suspended until a final

disposition of the request for reconsideration is rendered or six months expires, whichever occurs

first").  This court cannot construe the FTCA in a way that would allow for such a result.  Cf.

United States v. Kubrick, 444 U.S. 111, 117 (1979) ("Section 2401(b) . . . is the balance struck

by Congress in the context of tort claims against the Government; and we are not free to construe

it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims.").

### D. Whether Russell is Entitled to Equitable Tolling

Having found that the prison-mailbox rule does not apply, the court finally considers

whether equitable tolling is appropriate.  The Supreme Court has held that "the FTCA's time

bars are nonjurisdictional and subject to equitable tolling."  United States v. Wong, 575 U.S.

402, 420 (2015).  For equitable tolling to apply, a litigant must show "(1) that he has been

pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and

prevented timely filing."  Holland v. Florida, 560 U.S. 631, 649 (2010) (internal quotation marks

omitted).  "[C]onsidered an extraordinary remedy," CVLR Performance Horses, Inc. v. Wynne,

792 F.3d 469, 476 (4th Cir. 2015), equitable tolling is "reserved for those rare instances where –

due to circumstances external to the party's own conduct – it would be unconscionable to

11

enforce the limitation period against the party and gross injustice would result," <u>Harris v. Hutchinson</u>, 209 F.3d 325, 330 (4th Cir. 2000).

Russell contends that equitable tolling should apply because COVID-19 restrictions at FCI Edgefield "routinely disrupted" "normal schedule operations and access to resources." (Resp. Opp'n Mot. Dismiss 3, ECF No. 44.)  Without more, however, these conclusory allegations do not justify equitable tolling.  For one thing, routine aspects of prison life, such as "restricted access to the law library and an inability to secure court documents[,] do not qualify as extraordinary circumstances."  <u>Allen v. Johnson</u>, 602 F. Supp. 2d 724, 728 (E.D. Va. 2009).  Moreover, "the COVID-19 pandemic does not automatically warrant equitable tolling for any [inmate] who seeks it on that basis."  <u>Day v. White</u>, No. 1:22-cv-2-MSN-IDD, 2022 WL 4585522, at *5 n.9 (E.D. Va. Sept. 22, 2022) (unpublished) (quoting <u>United States v. Henry</u>, No. 2:17-cr-00180, 2020 WL 7332657, at *4 (W.D. Pa. Dec. 14, 2020) (unpublished)); <u>United States v. Aigbekaen</u>, Cr. No. JKB-15-0462, 2021 WL 1816967, at *1 (D. Md. May 6, 2021) (unpublished) (explaining that a litigant must do more than "mak[e] a passing reference to the pandemic or the resulting lockdown").  Rather, an inmate must state with specificity how the complained-of condition prevented him from filing on time.  <u>See, e.g.</u>, <u>Cottee v. Unknown</u>, 1:22-cv-149-MSN-IDD, 2023 WL 1071990, at *3 (E.D. Va. Jan. 26, 2023) (unpublished); <u>Booker v. Clarke</u>, No. 3:21cv212 (DJN), 2022 WL 464554, at *3 (E.D. Va. Feb. 15, 2022) (unpublished); <u>Orme v. City of Charleston</u>, No. 2:22-cv-00092, 2022 WL 17540274, at *5 (S.D. W. Va. Dec. 8, 2022) (unpublished).  In this case, Russell has not alleged any specific facts showing that pandemic-related restrictions at FCI Edgefield prevented him from timely filing his request for reconsideration.  The court therefore declines to equitably toll § 2401(b)'s limitations period.

### IV. CONCLUSION

After conducting a de novo review of the report and recommendation and the parties'

arguments, the court declines to adopt the report and recommendation and concludes that

Russell's FTCA claim against the United States is time-barred.

It is therefore

**ORDERED** that the United States' motion to dismiss, docket number 41, is granted and

that Russell's complaint, docket number 1, is dismissed.

**IT IS SO ORDERED.**


s/ Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
February 6, 2024


### NOTICE OF RIGHT TO APPEAL

Petitioner is hereby notified that he has the right to appeal this order within sixty (60)

days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate

Procedure.